Commonwealth *v.* Jerko, Appellant.

Argued October 3, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Charles J. Margiotti,* and with him *Service, McNeal & Buckley, Joseph Nelson, William M. Gillespie, Sebastian C. Pugliese* and *Edward Friedman,* for appellant.

*Leo H. McKay,* District Attorney, and with him *Louis J. Graham* and *J. H. Dilley,* for appellee.

OPINION BY GAWTHROP, J., January 29, 1930:

Defendant and two other persons, John Muldovan and Nick Pilesa, were indicted jointly for the unlawful manufacture and possession of intoxicating liquor for beverage purposes, and for conspiracy to commit those offenses. Muldovan and Pilesa fled the jurisdiction and were not apprehended. Defendant was tried and the jury rendered a general verdict of guilty on which the sentence was to pay a fine of $1,000 and undergo imprisonment for one year and six months, a penalty authorized by our Enforcement Act of March 27, 1923, P. L. 34.

The statement of the questions involved, as it is presented in the brief filed on behalf of defendant in this appeal, limits our review to determining whether there were committed at the trial any errors which entitle him to a reversal of the judgment and the granting of a new trial.

The first complaint is that three samples of mash and two samples of alleged alcohol, being Commonwealth's exhibits seven to eleven inclusive, which were analyzed by a chemist for the purpose of determining the alcoholic content thereof, should not have been admitted in evidence, because the evidence does not show that the samples, when they were analyzed, were in the same condition in which they were when they were taken from the raided premises. The witness who took the samples from the premises testified that he sealed and labeled them and turned them over to Sergeant Sheridan. The latter testified that he turned them over to a chemist at Pittsburgh in the same condition in which he received them, together with a letter containing the number or numbers of the samples and a request for analyzation. The chemist identified each

sample analyzed by him by the number of the label, by the number appearing on the letter of transmittal which he received with the sample, and by his record card. Each witness, through whose hands they passed, positively identified them by marks or memoranda on the containers. A careful review of the evidence touching this point has convinced us that the identification of the exhibits as the same intoxicating liquor as that obtained on defendant's premises was satisfactorily established.

When the Commonwealth's witness, Sergeant Sheridan, was on the stand he testified on direct examination that the letter of transmittal which accompanies a sample that is sent to the chemist for analyzation is a mere office memorandum made for the purpose of "keeping track of the samples turned in by the agents, and not for use as evidence in court." Following this he was cross-examined by counsel for appellant who, referring to the letter said: Q. "And then you say that it isn't any good to you; you don't need that in court; you just make it to put on your record?" A. "Absolutely, I didn't see it used in any court." Q. "You didn't use it in court?" A. "I have never been asked for it before ......" Q. "And when you said it wasn't made for use in court you didn't mean it?" A. "I did mean it. It isn't made primarily or principally for court." Following this he was asked on redirect examination how long he had been in the government's service and how many times he had been required to produce a letter of transmittal, and answered that this was the first and only time in three years that he had been required to produce such a letter. This answer was objected to by counsel for defendant and the overruling of the objection is the subject of the first assignment of error. It is sufficient answer to this assignment to state that the objection was made after the answer was in, and there was no motion to

strike it out. But we agree with the district attorney that as the matter of the purpose and use of these letters of transmittal was developed by counsel for defendant in cross-examination, the re-examination of the witness in that connection was not improper. The extent to which a party will be permitted to re-examine his own witness is largely within the discretion of the trial judge: Com. v. Smith, 4 Pa. Superior Ct. 1. There was no abuse of discretion here.

The next complaint, raised by the fourth assignment of error, is that there was error in permitting two of the Commonwealth's witnesses to testify relative to two long distance telephone calls to the raided premises, purporting to have been made by defendant while he was in Ohio. The assignment violates Rule 22 of this court by referring to more than one bill of exceptions. Therefore, we refrain from discussing the questions raised thereby.

During the trial one of Commonwealth's witnesses, Elliott, made two remarks referring to the counsel for defendant which are the basis of the fifth and sixth assignments. After the witness testified that defendant owed him over a thousand dollars for making whisky the district attorney asked him, "When did you quit making whisky?" A. "Well, the reason I quit making whisky was because I was told to quit making whisky until Attorney Nelson was elected—." Attorney Nelson was one of the counsel for defendant. A little later the witness was asked: Q. "Did your term end as constable, or did you resign?" A. "Well, ask Mr. Service. He knows. He got $50 off me for nothing, he knows." It is urged that the trial judge erred in refusing to withdraw a juror and continue the case because of these answers of the witness. The record shows that at the time the remarks were made counsel for defendant made no complaint, did not move to strike out, and did not ask the court to direct the jury

to disregard the remarks or move for the withdrawal of a juror. They did nothing at the time, except put the witness through a protracted cross-examination as to all the matters mentioned in the remarks. It was only after six other witnesses had been examined and the noon recess had intervened that the motion to withdraw a juror, grounded on Elliott's gratuitous reflections on counsel for defendant, was presented. This was too late. Mr. Justice DEAN, speaking for our Supreme Court in Com. v. Weber, 167 Pa. 153, 164, recognized that there are rare instances where judgments of a serious character, such as murder, have been set aside because of errors or slips by the prisoner's counsel which may have brought about the adverse verdict. But in the language of the same justice, "There is no instance of it having been done where the trial on the whole was so fair as this, and where the verdict was in accord with the overwhelming weight of the evidence." We may add that defendant did not take the stand or call a witness in his own behalf. There would seem, therefore, to be some justification for the contention of the district attorney that the belated motion to withdraw a juror was an afterthought on the part of the able counsel for defendant, made for the purpose of preparing the way for a motion for a new trial and an appeal. The disposition of the question, whether a juror should be withdrawn for causes of the character under consideration is largely one for the discretion of the trial judge and the appellate courts will reverse only in cases of manifest error: Com. v. Striepeke, 32 Pa. Superior Ct. 82. After a reading of the entire record and a full consideration of the printed and oral arguments of the respective counsel, we are of one mind that no error was committed in overruling the motion to withdraw a juror. This conclusion is in harmony with that of the trial judge, who said in his opinion: "We cannot

believe, and do not believe, that in this case the jurors were influenced against the defendant on account of these remarks. We are of opinion also that these remarks would have no effect upon the minds of the jurors as to the opinion of Mr. Nelson and Mr. Service and, therefore, could be in no way prejudicial to their client.''

When the premises were raided the officers found in a cupboard an account book containing, inter alia, a statement showing daily receipts and expenditures during several months prior to the raid. Among the expenditures was an item of $6,225 paid for a still. The admission in evidence of this book is the subject of the seventh assignment of error. The book was written in the Greek language. Parts of it were translated and a copy of the translation was offered in evidence with the book. The only objection made to the offer was that it was limited to certain parts of the book. Following this objection the Commonwealth offered the whole book in evidence, together with a translation of certain parts of it in English, and stated that ''if the defendant wishes to translate other parts of the book he may do so.'' There was no objection to this offer. Therefore, this assignment must be dismissed. We are of opinion, however, that even if proper objection had been made to the offer the trial judge would not have been required to sustain it.

Lastly, it is urged that error was committed in admitting in evidence a photograph of handwriting on the wall of the house in which, according to the Commonwealth's evidence, defendant was manufacturing intoxicating liquor; and in admitting in evidence the recognizance signed by defendant in this case. The offers were made for the purpose of permitting the jury to compare the handwriting on the wall with the admittedly genuine signature of the defendant on the recognizance. The question of the admissibility of

these exhibits is not properly before us, because the record shows that there was no objection to the offer of·them in evidence in the court below.

After the fullest consideration, we are of one mind that defendant received a fair trial, free from prejudicial error, and was properly convicted.

All of the assignments of error are overruled and the judgment is affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence, or any part of it, which had not been performed at the time the appeal in this case was made a supersedeas.